Colcock J.
Two questions are presented for our determination :
1st. Is th;e clause of the law which requires aliens to perform militia'duty within their regiments unconstitutional ?
3nd. Is it-a violation of national law ?
In deciding a question of such vital importance to tb,e interest of my fellow citizens, I feel most sensibly the responsibility of my situation 5 and the magnitude of the,duty is not diminished' by any confidence in my own powers.
1 shall not attempt to follow the counsel through' their very able and elaborate argument. Many of their fundamental positions will be readily acceded. It is not a question at this day, that all power emanates from the people, and that the Federal Constitution was formed by them. But this doés not enable us to determine the quantum of power which they intended to delegate to it. 1 take it to be equally deaf, that having in each State established independent sovereign-ties, before the formation of this government, that they did not intend to take from the soverign. power of these States more than was essentially necessary for the establishment of the federal government, and that it is not the duty of the judiciary of the States to attempt to enlarge or diminish die power which is given. When.we advert to the situation of the States-at the formation of the government and to the well known jealousy of those who were opposed to a consolidated government,-it is -not to be supposed that every grant of *332 power to the general government is necessarily exclusive ;; for that would most effectually destroy- every thing like sovereignty in the States. The reasonable and just construction of the Constitution leads to an opposite conclusion; for it is said by those able and distinguished expositors of the constitution, whose writings are contained in the Federalist^ that no power is to be considered as exclusive, except when it is so in terms, or where there is a direct repugnancy or incompatibility in the exercise of a-- similar power by the States. The power in the case before us is given in these . words, £< to provide for calling forth .the militia to execute the laws of the Union, suppress insurrection, and repel invasion to re-organize Sic. Now here.are no exclusive words, nor does thé constitution prohibit the States from the exercise of a similar power when the same shall be necessary for State purposes. It only remains then to ascertain if there be any direct repugnancy in the exercise of the power - in the State , and I would ask, whether a State may not require the aid of its militia to suppress insurrection, and rebellion, orto repel invasion t To assert that the people of any State had surrendered to the general government, the absolute and exclusive control over the militia, would excite great surprize. But to say, that the,States, who- aye so peculiarly and unfortunately situated as we are, in relation to a large majority of o.ur inhabitants, should have done so, is calculated to excite something more than surprize. Can it be thought that a government, like that of this State, can be supported with-put the aid, of militia ?■ How are the laws to be enforced ? The Stakes are prohibited from raising armies or supporting a navy. How should we 'suppress a rebellion ? Apply to the President to make a draft of the militia f it is true that the 4th section of the 4th article of the constitution secures-to the States the aid of the general government when called for; but they may. surely make use of tli.eir own means in the first instance. It has been contended that the. restriction on the power granted, “ that of appointing officers and training *333 the militia',” was intended as an expression of the only pow? er which was left to the States. But the fallacy of such reasoning is easily detected. It is contrary to reason and common sense, that the restriction of a power granted should bo-used-to extend the power ; on the contrary, this restriction' proves, most ineontrovertibly, that the povycr was intended-to be divided and not actually given up ; and in iny. opinion it speaks volumes on the subject. To whom is the agent, responsible ? To his principal. Reserving to the States the command of the officers, is reserving the use of the soldiers, except when called out by the general government, and in the field or at the place of rendezvous. The militia officers are-under the'authority of the State and may therefore be commanded to enrol, (to answer the question of the counsel for the appellant,) even boys or old men for State purposes. But in the language of the distinguished judge, Story. “ It. is almost too plain for argument, that the power here given to-congress over the militia is of a limited nature, and confined to the objects specified in the clauses ; and that in all other respects and for all other purposes, the militia are sub-, ject to the control and government of the State authorities,” (Houston vs. Moore, 5th Wheaton’s Reports, 50.) But it is said that in cases of concurrent authority where the laws of the State and the union are in direct and manifest collision-on the same subject, those of the union, being the supreme' law oí the land, are of paramount authority, and that congress having' declared that all free white males within the ages of 18 and 45 shall constitute the militia, no others can be admitted. The principle is admitted, though the deduction and its application is denied. Having established the position of a concurrent authority, it is not difficult to shew that there is no'.collision in the exercise which has been made of it by the two governments. Our patrol law, oh which the safety of the State so much depends, as well as §ome other of oily laws of a similar character, ■ applicable to our peculiar sitúa-í-kffij are in some measure incorporated with, the militia laws, *334 The ^plains of the beat companies are required to prick ofisb1 many from the muster foil, once a month, to perform patroldu— ty. For the purpose of discharging this municipal-or State duty, alt within his beat are to be enrolled. So in the act to suppress insurrection, the magistrates issue their warrants to the militia officers. It is not pretended that the alien is to be forced into the service of the United States; on the contrary be is - only required-to do duty within his regiment. To say that he must stand a draft when one is ordered by. the' general government, is begging the question. He is not among those whose services the United States have thought fit to require, when they shall be called on to enforce their laws, suppress insurrection, or repel invasion.
It was further urged, that the law was unconstitution- ’ al, because all power over foreigners was committéd to the general government. But I am not aware of any exclusive-power which is given to the general government over foreigners in their individual capacity, except that of making them citizens. It is admitted that the States in the exercise of the sovereign power which .they possess are bound to observe the laws of nations and to regard the rights of foreigners, so far-as they are defined and protected by those laws: .1 will therefore proceed to enquire whether the act in any respect c.oh.--travenes the laws of nations.
Two positions are taken by the counsel for the appellant on .this branch of the case. ■
. 1st. That it is the right of a foreigner to enter any state he may choose to visit for lawful or innocent purposes.
2nd. That no state has a right to require the. personal services of a foreigner, except on sudden emergencies.
Reference has been made to Grotius and Vaitel, in.support of these positions. It is not saying too much,, perhaps, to say that it is on many points difficult to determine what is the law of nations. When we recollect what is the-foundation of this law, it is. not. surprising that it should be so, unless it be reduced to something like positive law by in- *335 ^erchange of treaties; and to effect such an object with even •a large portion of the nations of the earth, both experience and history has shewn it to be impossible. The first author referred to, Grotius, t( directs us, in searching for the law of nations, to have ' recourse to the same means, that are made use of in searching for written civil law, to usage or custom, -to conjectures, and to the judgment and testimony of skilful persons.” Now (says Rutherforth, in his comment on this part of Grotius, (2 Institutes 470.) “ The usage in which ’unwritten civil laws appear, consists in immemorial and uninterrupted practice. But if we look into the practice of nations, as it is related in history, it does not appear, in any instance to have been constant and uniform; that is, no usage appears, from whence'we can collect what the positive'law •of nations is.” Grotius was aware of this: for when this help fails, he directs us to have recourse to conjectures, A most uncertain guide truly. But if the practice of nations has ■been variable and contradictory, all conjectures will be nothing to the purpose ; apd it is as little to the purpose to refer •as to the judgment and testimony of skilful persons. Where do they find it ? Their skill cannot discover any usage of nations, where the practice, as history relates it, is variable and contradictory. Their judgment will afford us as ’ little aid; for there is no room for its exercise; and their testimony will prove nothing, where the law is an unwritten .one, and consequently they can háve no record of it before them.” But if the law of nations, instead of being purely positive, is only the law of nature, applied in consequence of the common consent of mankind, to the collective bodies of civil'societies, as to moral agents, aud to the several members of such societies, as to parts of those bodies, the dictates of this law may be found by the same means that we make use of in searching ■for the dictates of the general law of nature ; and pursuing this guide, it will not be difficult to shew that every nation has such an absolute, exclusive, right of territory, as well authorizes a refusal to any individual to enter or remain with *336 out the consent of the supreme power, or under such conditions or restrictions as such power may think fit to impose In fací, I think it may be shewn, that (xrotius himself is obliged to yield this point, and that he does yield it.. In.thé first volume he contends for the right of foreigners to enter and pass through the territory of any nation, and even so far as to say it may be considered a just cause of war, if they are refused ; but when the inconvenience and even danger resulting from such a doctrine press themselves on his mind, he replies, “ your fears cannot abridge my rights In the conclusion, however, he says, if there be fear, hostages maybe required, or they may be compelled to go through in small parties.” Thus yielding the whole ground; for if they can impose terms, they are to judge what they may be, and thus the exclusive right is acknowledged. The authority of Vattel is also relied on, but on examination it will be found that, that part of the work referred to, the 8th chap, of the 2nd book, is treating only of those who pass through or sojourn in a country, as contradistinguished from resident fo-feigners. The chapter commences by saying, “ we have already treated of the inhabitants or persons who reside in the country where they are not citizens.” Of transient foreigners he does say they are not subject to militia duty, and that the State cannot control their persons ; that is, detain them when they wish to depart; which may be granted without impugning the act which requires resident foreigners to do duty: The whole chapter would shew, however, that the so» vereign power has a right to impose any condition he pleases on a foreigner who enters the territory. In section 135. ■p. 172. he says, “ since the lord of the territory may whenever he thinks proper forbid its being entered, he has no doubt a power to annex what condition he pleases to the permission to enter.” He goes on after thus establishing the right, to recommend, of course, that it be exercised with humanity. In page 102, Book, 1st section 213, ke says, a‘ the inhabitants who are distinguished from citizens, are ib *337 íreigueís who are permitted to settle and stay in the country,, Bound to the society by their residence, they are subject to the laws of the State, while they reside in it; and they are obliged to defend it, because it grants them protect i-ionjthoughthey do not participate in all the rights of citizens.” Rutkerforih, in his lectures on Grotius, after a most elaborate view of this doctrine, says, “ in consequence of this exclusive right of property which a nation has in its own' territories, the law of nations is not the only measure of what is right or wrong in the intercourse of nations with one another. This right of territory extends the authority of the civil law to all questions which relate to the use or private ownership, of such moveable goods as are within the territory of the nation, and of such immoveable goods as are confessedly a part of the territory, whether its own members are concerned in these questions, or the collective bodies, or the individual members of other nations : Thus every State has authority to determine by positive laws upon what occasions and for what purposes, and in what numbers, foreigners shall be allowed to come within its territories ;> to exclude them from trading there at all; or to regulate their trade; to leave them under their natural incapacity of. inheriting immovable goods, or to prescribe the conditions upon which theyjnay inherit.” It is true that Rutkerforih, (as all other writers on the subject do) recommends that this power be humanely exercised. Every nation, as well as individual, “has by the law of. nature® right to judge for itself, how far its intercourse, either of a commercial or friendly sort, is likely to be detrimental to itself; so that to- cut off either or both will be no act of injustice, though-it may be wrong, if causelessly done.. A nation has a moral power to withhold its benevolence; and they, from whom it is Withheld unreasonably, though they are not treated kindly,, are not injured. Now it is clear that the poner of the State is not exercised with any unreasonable degree of rigour in exacting this petty service from the alien. He is permitted to.reside and trade here, his life, his liberty, *338 and his property are protected hi equal degree with that of ithe citizen; and with what propriety can he complain ? Can it be unjust to require him to support that law which protects him ? Is it reasonable that he should derive all the. benefit which these laws afford and be exempt from rendering any return for the benefit ? Is it just-in return to the citizens of the country that he should be more favoured than they? No restraint is put on his person. He is at liberty to depart when he please. If the condition on which he is permitted to reside here be onerous,' he can rid himself of thfe burthen., by leeving the State. I think then it is clear, that the act of 1794, requiring aliens to do militia duty, and consequently subjecting them to patrol duty, is neither unconstitutional, nor against the law of nations.
Courtenay.Pepoon, for the motion,
. ElU'ott k Axon, contra.
The motion is, therefore, dismissed,